IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIVANI THOMPSON,

Plaintiff,

v.

PORTLAND COMMUNITY COLLEGE,

Defendant.

_____

Case No. 3:26-cv-00655-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

Defendant Portland Community College ("PCC") moves to dismiss pro se plaintiff Kivani Thompson's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(b)(6). For the reasons stated below, PCC's motion is granted.

## BACKGROUND

Plaintiff was enrolled as a student at PCC during the Summer 2025 and Fall 2025 terms. On July 17, 2025, approximately four weeks into the summer term, plaintiff "emailed all of his instructors [notifying] them of the health issues his mother was experiencing and her chest pains

Page 1 – OPINION AND ORDER

she was having." Am. Compl. pg. 1 (doc. 8). On September 4, as the summer term was ending, plaintiff again "emailed all of his instructors [specifying he] expected an extension for the work he was due to complete." *Id.* at pg. 2. Every instructor immediately offered different options for extensions and solutions to help plaintiff complete the assigned work:

- "Paul Wheatcraft responded with 'the best that I can do is allow you until this Sunday to submit the missing assignments and quizzes.'"

- "Greg Kerr gave Mr. Thompson permission to complete the assignments necessary for a passing grade."

- "Adrian Rodriguez responded to Mr. Thompson with 'If you need more time, I can give you access to class after grades are submitted and I can update your grade when you feel you're done.'"

*Id.*

On September 6, "Greg Kerr stated 'I will accept [missing assignments] as a reply to this email by no later than 5:00pm." *Id.* Plaintiff was "hindered" and ultimately did not submit those assignment until "1 minute after the deadline and Greg Kerr stated 'I was specifically looking out for your files until 5:00pm, and when I didn't see them, I submitted grades at 5:01pm.'" *Id.*

On September 7, plaintiff "emailed Paul Wheatcraft . . . stat[ing] 'I just reread the original email and the quizzes were not opened up for me to turn in.'" *Id.* Mr. Wheatcraft responded the same day remarking: "unfortunately, we are out of time, and I have to submit grades this morning." *Id.* But he did inform plaintiff "that he reopened the quizzes and Mr. Thompson can find the password to the quizzes within the lecture videos he would watch before completing the quizzes." *Id.*

On September 23, "Adrian Rodriguez informed Mr. Thompson that his work was created and turned in using artificial models and the evidence he has to prove it, is the fact that the work possessed fictional bibliographic references." *Id.* Also on September 23, plaintiff emailed "Richard Zhao on the first day of class that he could not attend due to outside extenuating circumstances

Page 2 – OPINION AND ORDER

involving a legal situation Mr. Thompson could not control." *Id.* "Richard Zhao responded with the claim 'there is no penalty for missing the first day of class.'" *Id.*

On September 30, "Charisse Loughery emailed Mr. Thompson after he complained about the professors who instructed him and stated 'we are reaching out to see if we can learn more information about what occurred and your desired next steps.'" *Id.* Plaintiff "responded with the factual information he possessed at the time and began to shift focus to the situation concerning his extenuating circumstances." *Id.* at pg. 3. Ms. Loughery indicated she would "move these concerns to the program deans that oversee the areas for these faculty members." *Id.*

Plaintiff thereafter received additional assurances his concerns were being reviewed and that "the college takes them seriously." *Id.* On October 14, "Josh Laurie completed his investigation and results showed 'the allegations of defamatory remarks, negligence, incompetence, and abuse of power are not substantiated.'" *Id.* Separately, "GD Lyer completed her investigation and her results showed 'the allegations of defamatory remarks, negligence or incompetence, and abuse of power appear to be unfounded based on the evidence reviewed.'" *Id.*

On November 1, plaintiff "was arrested due to his extenuating circumstances and was unable to complete the rest of his fall term classes." *Id.* On November 10, plaintiff "was notified through email communications that his SAP standing was in warning or probationary status." *Id.* On November 15, plaintiff "was notified via email that he could not complete any remaining coursework for the fall term as it was too late to obtain a passing grade according to the instructors course syllabus." *Id.*

On December 8, plaintiff "enrolled in winter term and planned to attend in order to continue to pursue his criminal justice degree." *Id.* On December 18, he "received an email from the financial aid office stating 'your courses for next term are at risk of being deleted. Your financial

aid has been suspended and you have not made other payment arrangements with the college.'" *Id.* The following day, plaintiff "attempted to file multiple appeals for the situation concerning his SAP status and they were automatically denied due to federal policy regarding his GPA." *Id.* On December 30, plaintiff "was informed that his winter term registration had been deleted [because he] did not meet PCC's payment requirement." *Id.*

On January 5, 2026, plaintiff "emailed multiple departments to fix the situation regarding his SAP status." *Id.* The next day, "Jennifer McBratney responded with an email stating 'due to the detailed nature of your requests, it will involve the collaboration of several PCC departments to provide further information.'" *Id.*

On February 18, "Christina Shafer emailed Mr. Thompson about the investigation and stated that she spoke with Richard Zhao and he made remarks that equate to my participation and attendance in the term." *Id.* On February 26, "Richard Zhao responded to Mr. Thompson's inquiry about his participation in the investigation and Zhao stated 'I want to say that I have never been approached by anyone about my input to the appeal.'" *Id.* at pg. 4. He "also stated 'when I submit the final letter grade, I will have to put in the last day of attendance for students who failed the class in order to proceed.'" *Id.* Mr. Zhao then "altered Mr. Thompson's academic record and stated the following: 'you never attended classes, and I had no choice but to put in the date of our first class meeting.'" *Id.*

On March 1, plaintiff "had a conversation with Jennifer McBratney on the phone, where they both agreed the course would be removed from his transcript and the pending debt would increase to $6.2K." *Id.* On March 8, "Jennifer McBratney emailed Mr. Thompson and said 'I would highly recommend working on the balance while we continue the conversation about your class with Richard Zhao.'" *Id.* (internal brackets omitted).

Page 4 – OPINION AND ORDER

Plaintiff initiated this action against PCC on April 2, 2026. On April 7, "Christina Shafer emailed Mr. Thompson and stated, 'After evaluating the details of your case, the college will not be making any further changes to your record.'" *Id.*

On April 27, plaintiff filed his amended complaint, alleging the following claims: (1) deprivation of "the right to due process of law, the right to equal protection of the laws, the right to be free from compelled speech, and the right to informational privacy violation" under 42 U.S.C. § 1983; (2) *Monell* liability under 42 U.S.C. § 1983; (3) conspiracy under 42 U.S.C. § 1985(3) due to "coordinating false statements, withholding or altering academic information, denying promised extensions, misrepresenting instructor communications, obstructing Plaintiff's ability to complete coursework, denying appeals without review, and imposing academic and financial penalties based on fabricated information"; and (4) negligence pursuant to 42 U.S.C. § 1986. *Id.* at pgs. 4-6.

## STANDARDS

Where the court lacks subject matter jurisdiction, the action must be dismissed. Fed. R. Civ. P. 12(b)(1). The party who seeks to invoke the subject matter jurisdiction of the court bears the burden of establishing that such jurisdiction exists. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The court may hear evidence regarding subject matter jurisdiction and resolve factual disputes where necessary. *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008).

Where the plaintiff "fails to state a claim upon which relief can be granted," the court must dismiss the action. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For the purposes of the motion to dismiss, the complaint is

liberally construed in favor of the plaintiff and its allegations are taken as true. *Rosen v. Walters,* 719 F.2d 1422, 1424 (9th Cir. 1983). Regardless, bare assertions that amount to nothing more than a "formulaic recitation of the elements" of a claim "are conclusory and not entitled to be assumed true." *Ashcroft v. Iqbal,* 556 U.S. 662, 680–81 (2009). Rather, to state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca,* 652 F.3d 1202, 1216 (9th Cir. 2011).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g., Haines v. Kerner,* 404 U.S. 519, 520 (1972). The court, in many circumstances, instructs the pro se litigant regarding deficiencies in the complaint and grants leave to amend. *Eldridge v. Block,* 832 F.2d 1132, 1136 (9th Cir. 1987). A pro se plaintiff's claims may nonetheless be dismissed with prejudice where it appears beyond doubt the plaintiff can prove no set of facts that would entitle him or her to relief. *Barrett v. Belleque,* 544 F.3d 1060, 1061-62 (9th Cir. 2008).

## DISCUSSION

PCC argues this case should be dismissed because: (1) "the Eleventh Amendment prevents Thompson from bringing the claims he has alleged," and (2) the "Amended Complaint fails to allege sufficient facts to state a claim for relief." Def.'s Mot. Dismiss 2 (doc. 12).

Plaintiff argues "PCC waived immunity by accepting federal funds," denoting "[c]ourts consistently hold that immunity is waived for claims under: Title VI, Title IX, Section 504 of the Rehabilitation Act, ADA Title II, [and] FERPA." Pl.'s Resp. to Mot. Dismiss 1 (doc. 15). Plaintiff also invokes "*Ex parte Young* [because he seeks] prospective remedies, not retrospective damages." *Id.* at 2. He then concludes that his "FERPA-linked record-handling violations," "retaliation claim under federal funding statutes," and "*Monell*-style theory of systemic failures" are adequately plead. *Id.* at 2-3.

Thus, as an initial matter, plaintiff's opposition is either silent or does not meaningfully address several defects specifically raised by PCC's motion. *See generally id.*; *see also Justice v. Rockwell Collins, Inc.*, 117 F.Supp.3d 1119, 1134 (D. Or. 2015), *aff'd*, 720 Fed.Appx. 365 (9th Cir. 2017) ("if a party fails to counter an argument that the opposing party makes . . . the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Moreover, plaintiff impermissibly appears to plead new claims for retaliation and FERPA violations via his response brief.[1] *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (when reviewing the sufficiency of pleadings, "a court may not look beyond the complaint to a plaintiff's moving papers"). The amended complaint is therefore subject to dismissal on these bases alone.

## I. Eleventh Amendment

Public universities are considered "arm[s] of the State of Oregon for Eleventh Amendment immunity purposes." *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999). And "[s]tates are protected by the Eleventh Amendment from suits brought by citizens in federal court." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817 (9th Cir. 2001). Critically, the State of Oregon has not waived its immunity to suits brought under 42 U.S.C. § 1983, 42

---

[1] Even so, neither the pleadings nor plaintiff's response brief contain facts intimating PCC retaliated against him. The amended complaint flows from the premise that plaintiff was denied continued federal financial aid because of his instructors' malfeasance in reporting grades. Critically, he does not assert that his instructors assigned him poor grades because of any protected activity. And it is well-established that the Family Educational Rights and Privacy Act – or FERPA – does "does not create a private right of action, which means that an individual is not able to bring suit to enforce the provisions of that Act." *Perkins-Gottfried v. Southern Or. Univ.*, 2026 WL 1882925, *3 (D. Or. June 30, 2026) (collecting cases); *see also Cherry v. Clark Cnty. Sch. Dist.*, 2012 WL 4361101, *5 (D. Nev. Sept. 21, 2012) (FERPA "protects educational records and personally identifiable information of students from improper disclosure"; it "is not a law which absolutely prohibits the disclosure of educational records [but rather] imposes a financial penalty for the unauthorized disclosure of educational records') (citations and internal quotations omitted).

U.S.C. § 1985, or  42 U.S.C. § 1986. *Rote v. Comm. on Jud. Conduct & Disability of the Jud. Conf. of the U.S.*, 577 F.Supp.3d 1106, 1125 (D. Or. 2021).

As a result, any claim for damages against PCC or its employees is barred by sovereign immunity. *See Committee v. Or. State Univ.*, 2018 WL 4623159, *2 (D. Or. Sept. 26, 2018) ("public universities are entitled to sovereign immunity" and "employees acting within their official capacities are shielded from suit") (citations omitted); *Cerrato v. S.F. Cmty. Coll. Dist.*, 26 F.3d 968, 975 (9th Cir. 1994) (Eleventh Amendment barred the plaintiff's § 1983, § 1985, and § 1986 claims against a community college school district); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 246-47 (1985), *abrogated on other grounds as recognized in Lane v. Pena*, 518 U.S. 187, 198 (1996) ("the mere receipt of federal funds cannot establish that a State has consented to suit in federal court"); *Ali v. Carnegie Inst. of Wash.*, 967 F.Supp.2d 1367, 1384 (D. Or. 2013) (university's receipt of federal funds to perform research did not deprive it of sovereign immunity).

Plaintiff's reliance on *Ex parte Young* likewise does not salvage his claims because PCC is the sole defendant. *Ex parte Young* provides a limited exception to the Eleventh Amendment that "allows citizens to sue state officers in their official capacities for prospective declaratory or injunctive relief . . . for their alleged violations of federal law." *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013) (citation and internal quotations omitted). In other words, *Ex parte Young* applies to individual state officials (none of which are named as defendants here) and only when the official "ha[s] some connection with the enforcement of the act." *Id.* at 943. PCC's motion is granted in this regard.

## II.    Other Pleading Deficiencies

Even presuming sovereign immunity did not operate to bar plaintiff's claims, the amended complaint is deficient in myriad other respects. First, plaintiff has not cited to, and the Court is not aware of, any authority recognizing a constitutionally protected right to continued enrollment at PCC. To the contrary, the U.S. Supreme Court has declined to carve out a fundamental right to education. *See San Antonio Indep. Sch. Dist. v. Rodriguez,* 411 U.S. 1, 35 (1973) ("[e]ducation, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected").

Additionally, the Ninth Circuit has held that academic dismissals do not require a hearing and meet the requirements of procedural due process where the dismissal decision appears to be "careful and deliberate." *Oyama v. Univ. of Haw.*, 813 F.3d 850, 875 (9th Cir. 2015). Here, plaintiff alleges that he raised issues surrounding his courses that resulted in several communications with PCC and ultimately an investigation. Am. Compl. pgs. 2-4 (doc. 8). Ultimately, though, plaintiff was unable to complete the Fall 2025 term due to pending criminal charges and, as a result, he was not qualified to receive any additional financial aid or enroll in the Winter 2026 term. *Id.* at pgs. 3-4. Accordingly, the amended complaint does not allege that PCC dismissed plaintiff because of his academic standing or because of discipline; rather, he (temporarily) could not enroll until he resolved his outstanding balance owed to PCC. Stated differently, the amended complaint alleges that PCC communicated with plaintiff, sought his version of events, and informed him of their decisions and the underlying reasons, which is all the law requires in this context. *See, e.g.*, *Oyama,* 813 F.3d at 875.

And the amended complaint does not allege any well-plead facts demonstrating PCC treated other students differently or that plaintiff is a member of a protected class, thereby foreclosing any claim under the Equal Protection Clause, 42 U.S.C. § 1985, or 42 U.S.C. § 1986.

*See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (to establish an equal protection claim, "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class"); *O'Handley v. Padilla*, 579 F.Supp.3d 1163, 1185 (N.D. Cal. 2022), *aff'd*, 62 F.4th 1145 (9th Cir. 2023) (outlining the pleading requirements of a conspiracy claim under § 1985 and noting that, among other elements, the plaintiff must "show some racial, or perhaps otherwise class-based, invidiously discriminatory animus lay behind the conspirators' action") (citation and internal quotations omitted); *see also Dooley v. Reiss*, 736 F.2d 1392, 1396 (9th Cir. 1984) (affirming the dismissal of a § 1986 claim "[b]ecause plaintiffs failed to state a claim under section 1985").

Finally, the amended complaint does not contain any facts evincing plaintiff was compelled to speak or sustained a privacy violation. In fact, plaintiff does not identify what coursework or academic requirements necessitated the submission of personal information. Rather, the only sharing of information alleged relates to details plaintiff chose to disclose for the purposes of either obtaining coursework extensions or lodging complaints/appeals.

By extension, plaintiff's *Monell* claim is also subject to dismissal, since it is premised on inadequately plead violations. *Cf. Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("[w]hile the liability of municipalities doesn't turn on the liability of individual officers, it is contingent on a violation of constitutional rights"). Plaintiff's *Monell* allegations are also largely comprised of labels and conclusions, which is insufficient. *See Mendoza v. City of Portland*, 2021 WL 6338484, *2-3 (D. Or. Dec. 2, 2021), *adopted by* 2022 WL 93852 (D. Or. Jan. 10, 2022) (conclusory allegations about express or implied city policies are inadequate and "a single constitutional deprivation . . . ordinarily is insufficient to establish [liability] under *Monell*").

Notwithstanding the amended complaint's deficiencies, the Court finds that dismissal with prejudice is not proper. Plaintiff's brief refers to additional facts and/or legal theories that may cure at least some of the defects outlined herein. Further, he has not had the opportunity to seek amendment with the benefit of Court guidance. As such, the Court cannot conclude, at least at this stage in the proceedings, that the amended complaint's shortcomings are incurable as a matter of law.

## CONCLUSION

For the foregoing reasons, PCC's Motion to Dismiss (doc. 12) is granted. PCC's request for oral argument is denied as unnecessary. Any motion to amend the complaint must be filed within 30 days of the date of this Opinion.

IT IS SO ORDERED.

DATED this 27th day of July, 2026.

_____/s/ Jolie A. Russo_____
Jolie A. Russo
United States Magistrate Judge

Page 11 – OPINION AND ORDER